UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| United States of America, ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 10-4047 |
| ) | |
| One Hundred One Thousand and 00/100 ) | |
| Dollars ($101,000.00) In United States ) | |
| Currency, ) | |
| Defendant ) | |

**OPINION AND ORDER**

Now before the Court is the Motion to Compel (#10) filed by the United States. The claimants in this forfeiture action have filed their opposition to the motion to compel. As explained herein, the Motion is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

In this action, the Unites States alleges that a traffic stop by law enforcement occurred on I-80 near Geneseo, Illinois, on January 23, 2010. The driver of the vehicle was Benjamin Bodhi Green, and the passenger was Green's wife, Ruby Rashall, both of California. Based on his observations at the scene, the police officer advised Green that he would be given a warning for failing to signal a lane change. The officer and Green went to the squad car. The officer requested a canine handler come to the scene.

Green was driving a rental car. He told the officer he had flown to New York to visit his aunt. He had rented the car in Manhattan on January 22 and was due to return it in San Francisco California on January 26. He said he and his wife were going to Park City, Utah to go skiing. The officer commented about the tight schedule and Green responded that he would just extend the rental

1

or "get another one.".

When the canine handler arrived, he asked Green if there was anything that would cause the dog to alert on the car; Green answered no. When he was asked if there was more than $20,000 in the car, Green again said no, but very quietly. The question was repeated and the answer was that they had "a couple thousand dollars". When asked again if it was more than $20,000, he said no. Green responded that a search of the vehicle was "ok if it's necessary." The officer asked him to confirm that "it's okay if we do that?" and Green answered "yes."

The dog alerted on the driver's front door seam and the trunk area. The officer questioned Rashall about why the dog might have alerted on the car, and she responded that they had just returned from a month long trip to Spain and Morocco. When they arrived in New York, they had rented the car to drive to San Francisco. She also said that an uncle had recently died and left her antiques, which they had sold while in New York, but she could not recall the names of the stores and she had no receipts. She also mentioned that they were visiting an aunt in New York and intended to tour the national parks. She did not know how much money was in the car.

The search revealed a small amount of cannabis wrapped in clear plastic and inserted into a silver and gold women's bracelet. Also found were three Federal Express shipping envelops containing bundles of currency totaling $85,000 . In Rashall's brown suitcase another $16,000 in currency was found. Both Green and Rashall were arrested. After his arrest, Green identified the bracelet as Rashall's. He initially told the officers he wanted to cooperate and agreed to be interviewed. He admitted the currency in the luggage was his. But when questioned further, Green refused to claim the money and refused to answer questions about its origins. When asked about an uncle leaving him old jewelry, he denied knowing anything about it; he did not mention selling

antiques or receiving an inheritance.

The United States then filed this forfeiture action, alleging a reasonable belief that the currency was furnished or intended to be furnished in exchange for a controlled substance. The funds are therefore subject to forfeiture under 21 U.S.C. 881(a)(6). Ruby Rashall and Benjamin Bodhi Green have each filed a verified claim (Doc. #6 and 7) to these funds. The claims are identical, stating that the claimant "claims an ownership and/or possessory interest in, and the right to exercise dominion and control over, all, or part of the defendant property herein."

The Government served Special Interrogatories on the Claimants. They responded with partial answers and with many objections. The Government has now moved to compel more complete answers to the Special Interrogatories.

## CIVIL FORFEITURE GENERALLY

Under the Civil Asset Forfeiture Reform Act (CAFRA), 21 U.S.C. § 881(a)(6), "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance [and] all proceeds traceable to such an exchange" are subject to civil forfeiture. Rules governing civil forfeiture proceedings are set out in 18 U.S.C. § 983 and in Admiralty and Maritime Supplemental Rule G . Under 18 U.S.C. § 983(1), where the government executes a seizure pursuant to a civil forfeiture statute such as 21 U.S.C. § 881, it must provide notice to interested parties. Any person claiming an interest in the seized property may file a claim with an appropriate official. 18 U.S.C. § 983(2). Where a claim has been filed, the government must commence a civil action *in rem* by filing a complaint for forfeiture in an appropriate court. Id. § 983(3)(A); Rule G(1), (2). Any person claiming an interest in the property may then contest the forfeiture by filing a claim in the court where the civil action is pending. 18 U.S.C. § 983(4); Rule G(5).

However, "[b]efore a claimant can contest a forfeiture, he must demonstrate standing." Mercado v. U.S. Customs Service, 873 F.2d 641, 644 (2d Cir.1989). Both Article III "case or controversy" standing and statutory standing must exist, and the burden is on the claimant to show both.

Statutory standing requires procedural compliance with Rule G(5) and 18 U.S.C. § 983(a)(4), namely the filing of a claim that identifies the claimant and its interest.. See, U.S. v. $85,000.00, - F.Supp. 2d -, Case WDQ-10-0371, 2010 WL 5087910, Dec. 7, 2010 (D. Md.); U.S. v. $12,126,00, - F.3d -, Case No. 08-16684, July 21, 2009 (11th Cir.). Courts disagree about what information is sufficient to identify a claimant's "interest."[1] Some courts have held that a simple claim of ownership will suffice. See, e.g., U.S. v. $40,000 in U.S. Currency, 763 F.Supp. 1423, 1427 (S.D. Ohio 1991)(holding that potential claimant "need not supply facts" in identifying ownership interest and that such information "become[s] important later in a forfeiture proceeding)"; U.S. v. $80,760.00 in U.S. Currency, 781 F.Supp. 462, 467 n. 15 (N.D. Tex.1991)(requiring claimants to explain their interest in the property to establish standing "improperly accelerates the claimants' ultimate burden"). But see, U.S. v. $487,825.000 in U.S. Currency, 484 F.3d, 662, 665 (3d Cir.2007)(claim was deficient because it contained no description of claimant's interest in the property, which Rule C(6) requires."); U.S. v. $39,557.00, More or Less, in U.S. Currency, 683 F.Supp.2d 335, 339 (D.N.J.,2010)(claim deficient because if contained only a "bald assertion of ownership").

Article III standing is more demanding than statutory standing, however and mere assertion

---

[1] It also appears to this Court that some of the cases blend the two types of standing together rather than identifying and analyzing them separately.

4

of an ownership interest in a claim without additional evidence of ownership means that the claimant lacks Article III "case or controversy" standing. See, U.S. v. $7,381.00, more or less, in U.S. Currency, - F.Supp. 2d -, Case No. 2009 WL 2998168, 2 (S.D. Ala.) (S.D. Ala.,2009); U.S. v. $39,557 in U.S. Currency, - F.Supp. 2d -, Case No. 07-449, 2008 WL 2901318, *3-4, May 21, 2008 (D.N.J.) (granting government's motion to compel answers to claimant's special interrogatories seeking details of how he came into possession of the defendant currency);U.S.v. $410,000 in U.S. Currency, - F.Supp. 2d -, Case No. 07-0598, 2007 WL 4557647, *5 Dec.21, 2007 (D.N.J.) (granting government's motion to compel claimant's answers to Rule G(6) special interrogatories because mere assertion of an ownership interest without additional evidence of ownership means that the claimant lacks Article III "case or controversy" standing); U.S. v. $746,198 in U.S. Currency, 299 F.Supp.2d 923, 932-33 (S.D. Iowa 2004) (driver of vehicle from which currency was seized could not establish standing simply by asserting he was the owner; he had to explain his possession); U.S. v. Ford 250 Pickup, 980 F.2d 1242, 1246 (8th Cir.1992) ("In order to show standing to contest a forfeiture, one must first show ownership.... To be heard in court, one must first prove the threshold requirement that he or she is the owner of the property subject to the forfeiture action."); U.S. v. $321,470.00 in U.S. Currency, 874 F.2d 298, 303 (5th Cir.1989) ("property may be forfeited ... if the only claimant is unable or unwilling to provide evidence supporting his assertion of an interest in the property.").

The cases cited by the Claimants - all arising in the 8th, 9th and 10th Circuits - are not to the contrary. First, many of them are not forfeiture cases, so taking statements about standing out of context and applying those statements to the circumstances in this case is not helpful. Second, they are not binding on this Court, and I do not find them persuasive as to this particular issue. As our sister court in the Northern District of Illinois has noted, "There must be some indication that the

claimant is in fact a possessor, not a simple, perhaps unknowing custodian, some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim." U.S. v. 47 West 644 Route 38 Maple Park, Ill., 962 F.Supp. 1081, 1085 -1086 (N.D.Ill.1997).

## THE SPECIAL INTERROGATORIES AND RESPONSES

In the instant case, identical claims were filed by Benjamin Bodhi Green and Ruby Rashall. The United States served Special Interrogatories on these two claimants. Those Interrogatories are as follows:

### *INTERROGATORY 1*

This interrogatory asks the Claimants to state current and all former names, aliases, nicknames, place of birth, social security number, visa, passport, or green card number, marital status, and all addresses for the past 5 years.

### *INTERROGATORY 2*

This interrogatory asks the Claimants to reveal their criminal history with details.

### *INTERROGATORY 3*

This interrogatory asks each Claimant to state "your current interest in all or any portion of the defendant property , approximately $101,000 in United States Currency (hereinafter "the defendant currency,"), and the full circumstances under which the interest arose."

### *INTERROGATORY 4*

This interrogatory asks for identification of any records, documents, or tangible items that "reflect or are relevant to" the Claimants' interests in or claims to the currency.

### *INTERROGATORY 5*

This Interrogatory asks the Claimants to "list each and every source from which you claim that the defendant currency was derived, including the exact amount of money derived from each source." It also demanded that the answer include dates, names, places and reasons for obtaining the currency or any portion of it, as well as the form of payment and any witness or document that supports the answer.

### *INTERROGATORY 6*

This interrogatory asked the Claimants to "List any facts establishing your ownership

of the defendant currency."

### *INTERROGATORY 7*

This interrogatory asks the Claimants to identify (name, address and telephone number) of all persons who has knowledge or information about the Claimants' alleged ownership along with a summary of what information each person is believed to have.

The claimants responded to the Interrogatories in a timely fashion. In response to the first two Interrogatories, they identified themselves fully and stated that they had no criminal history. In response to Interrogatories 3-7, each of the Claimants responded identically. Two objections were raised: the information sought violated their Fifth Amendment right against self-incrimination; and the information sought was beyond the scope of what is allowed under Rule G(6)(a). In addition to those objections, Claimants each made the following response,

> Claimant is the co-owner (along with [spouse]) of all the defendant property. Claimant has not yet investigated all aspects of this case and therefore cannot answer this question at this time as it is premature, [sic] claimant further objects to any further questioning regarding the "full circumstances under which the interest arose" as vague and overbroad.

## DISCUSSION

The question before the Court at this time is whether the information the United States already has is sufficient to demonstrate both Article III and statutory standing. As mentioned above, courts are not in agreement about how much information is required to satisfy Rule G's requirement that a claimant state his "interest." In the case now before this Court, however, it is unnecessary to decide this question, because the Claimants have failed to provide sufficient information to establish Article III standing, and their claims cannot go forward if they are unwilling to provide that information.

The information that Claimants assert in support of standing consists basically of two facts: the currency was in the control of the Claimants at the time of their arrest, and they have each

7

asserted, without any detail, that they are "co-owners" of the currency.

The Claimants' statements and conduct at the time of their arrest and shortly thereafter create great doubt about their current statement that they own the currency. They provided inconsistent statements about everything at the time of their arrest, everything from their travels and their plans to, most importantly, the money and where it came from. What one said, the other either could not corroborate or contradicted.

Moreover, the currency was found in shipping envelopes, which leads to a suspicion that they were perhaps not actually possessors but mere custodians of the currency. Some indicia of reliability or substance is required to reduce the likelihood that these are false or frivolous claims and therefore not made by persons with standing. The Claimants' bald assertion of ownership in the face of the circumstances alleged in the Forfeiture Complaint is simply insufficient to demonstrate a colorable interest in the currency. The United States is entitled to obtain more information about their claim in order to assess Article III standing.

None of the Interrogatories are either vague or overbroad. Rather, they are clear and pointed. Standing is a jurisdictional issue, so clarifying the Claimants' standing at the beginning of the case is not premature. Those objections are rejected out of hand.

That is not to say that all of the Special Interrogatories need be answered. Interrogatories 6 and 7 seek more than a fuller description of the Claimants' interests in the currency; they seek actual proof of the claims, which is unnecessary at this early stage. See, South East Lake View, Etc. v. Dept. of Housing, 685 F.2d 1027, 1034 (7th Cir.1982). In order to evaluate whether the Claimants have a colorable interest in the currency and therefore have standing to pursue their claims, however, Claimants must answer Interrogatories 3, 4 and 5, fully and directly.

This decision is not affected by the Claimants' assertion of the Fifth Amendment's privilege against self incrimination. A claimant's decision to invoke the Fifth Amendment does not decrease his burden of establishing standing. As the Seventh Circuit has noted, "[a] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence." U.S. v. Taylor, 975 F.2d 402, 404 (7th Cir.1992); see U.S. v. Rylander, 460 U.S. 752, 761 (1983) ("[T]he claim of privilege is not a substitute for relevant evidence."); U.S. v. Certain Real Prop. & Premises, 55 F.3d 78, 83 (2d Cir.1995) ("[T]he claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.").

## CONCLUSION

Accordingly, the Motion to Compel (Doc. #10) is GRANTED IN PART AND DENIED IN PART. The Claimant shall provide complete answers to Special Interrogatories 3, 4 and 5 within 21 days of this date.

ENTERED ON August 12, 2011

                                                s/ John A. Gorman

                                       JOHN A. GORMAN
                               UNITED STATES MAGISTRATE JUDGE